THOMPSON et al. v. JENNINGS et al.

(Circuit Court, S. D. New York. May 25, 1894.)

1. PATENTS—SAWS—NOVELTY.
    Claim 1 of patent No. 328,019, issued to Thompson and others, as assignees of Fowler, for a saw, to cut metal, with a tough pliable steel blade, highly tempered as to its teeth only, to prevent breaking of the blade by sudden twisting, is valid, having utility and novelty.

2. SAME—CONSTRUCTION OF CLAIM.
    Though, in the specifications of patent No. 328,019, for a saw to cut metal, it is stated that it is possible to fix the temper line at any point in the width of the blade, but that it is preferable to fix it at the base line of the teeth, and though claim 1 is for a saw highly tempered as to the teeth, claim 2, for a saw with a soft back and high-tempered teeth,

will not be construed to cover saws in which the temper runs into the blade any distance, but only saws where the temper is practically, though not mathematically, coincident with the base line of the teeth.

Suit by Henry G. Thompson and others against Charles E. Jennings and others for infringement of a patent for saws.

Edward H. Rogers, for complainants.

Philipp, Munson & Phelps, for defendants.

LACOMBE, Circuit Judge. Complainants, at final hearing, upon pleadings and proof, ask the usual decree for injunction and accounting, in a suit in equity brought under United States letters patent No. 328,019, issued October 13, 1885, to them, as assignees of the inventor, Thaddeus Fowler. The specification sets forth that the "invention relates to certain novel and useful improvements in saws, but more especially to that class of saws used in cutting metal and other hard substances, and has for its object to furnish a saw, which, while hard as to its teeth, so as to insure a durable cutting edge, shall be of such temper as to its body as to prevent its breakage when subjected to sudden cross strain or twist; and, with these ends in view, my invention consists in the article of manufacture hereinafter described, and then specifically designated by the claims."

The drawing annexed, and referred to in the specification, is as follows:

And the construction is thus described:

"A is the blade, having cut on the edge thereof the teeth, B, as in ordinary saws. The blade is made from tough and pliable steel, upon which the teeth may be cut and set by any ordinary process. I then proceed to harden the teeth to a high temper down to their base line, or line of junction with the body of the saw, taking care that the hard temper is confined to the teeth alone, and does not extend at all into the body of the saw. This gives, as a result, a saw whose blade is so tough and pliable as not to be broken by any bending or twisting to which it may be subjected, and which at the same time is provided with teeth of greater hardness than can be practically given to an entire saw without its breaking when subjected to a short bend or twist. The advantages gained by my invention are that the tough back upon which are the very hard teeth enables the latter to be used until worn away, and without the danger of breakage to which a saw hardened throughout to an even temper with the cutting teeth is constantly liable. While I am able so to temper the blade that the temper line may be at any point in the width of the blade, I preferably fix upon the base line of the teeth as the best and most advantageous point."

The claims are:

"(1) As a new article of manufacture, a saw as described, made from tough, pliable steel, and having the teeth thereof hardened to a high temper down to their base line, or line of juncture with the body of the blade, substantially as described.

"(2) A saw, as described, of a single piece of metal, with a soft back and high-tempered hard teeth, as specified."

The art of fractionally hardening steel tools of various kinds is old, a high temper being given to the working edge, while the rest of the tool remains untempered, and thus less liable to breakage. The class of saws to which the patent refers, viz. that used in cutting metal and other hard substances, includes several varieties, all in use before the patent was applied for. The "circular saw" is, as its name implies, a disk, with teeth upon the periphery; is mounted upon an arbor, and held in position by circular washers or clamps on each face, which cover all the central part of the disk, the teeth and a circular strip of metal sufficiently wide to permit of cutting to the required depth alone projecting beyond the clamps. It is worked by rotation. The "back saw" is a straight blade, such as is shown in the drawing, which is clamped firmly on the back throughout its entire length, the teeth and a strip of metal wide enough to admit of cutting to the required depth projecting beyond the clamps. It is operated as the ordinary hand saw is, by a to and fro motion. The "hack saw" is a straight blade like the last, but pierced at either end, and there clamped into the arms of a skeleton framework, which leaves the blade entirely free, stretched tightly between the clamping arms. It operates in the same way as the back saw. The "band saw" runs over pulleys like the belt of a sewing machine, and the teeth are continuously being thrown out of alignment as they pass onto the pulleys, and brought back into line by tension as they leave the pulleys. Two varieties of hack saws were known to the prior art. One of these was the Stubbs or English type of saw, which was tempered uniformly to such a degree that it could be filed for the purpose of sharpening its teeth, the necessary consequence of its comparatively soft condition being that the cutting edge was quickly dulled. The other was a saw, made by defendant, which was uniformly hardened to such a degree that it was not practical to file it. When it became dull it was thrown away. As a consequence of the hardening, it was brittle, and easily broken by flexure or shock. Prior to the patent, band saws appear always to have been made comparatively soft, in order to admit of sideways flexure over the pulleys. The testimony shows, however, that both circular saws and back saws had been made prior to the patent with the cutting teeth and adjacent strip hard, and the body soft, with the distinct purpose of preventing breakages, and thus strengthening the saw. Whatever break came from twist or shock of these tools when in use extended only through the hard-tempered strip, and did not fracture the entire blade. The patent is not in terms confined to hack and back saws. The drawing shows the blade of a back saw without any indication of the holes at either end which are present in such blades when mounted in the skeleton frame of a hack saw.

There would seem to be no invention in the mere application, for the same purpose, to the toothed edge of such saws of the fractional tempering already in use with circular and back saws. But complainants insist that their invention goes further than this, and that, in their method of arranging the relative temper of their tool, they have disclosed a result not theretofore known to the art. In the

earlier saws the fractional tempering secured the tool against a breakage across its entire width, or rather down to its clamps,—an accident which would produce unfortunate results to other parts of the machinery. The inventor's tempering, however, presents, as he contends, the further result of a tool in which bending or twisting produced practically no break at all. Complainants' expert, referring to that part of the specification which speaks of the temper as confined to the teeth alone, and not extending at all into the body of the saw, testified:

"It follows from this that the teeth are virtually isolated from each other on the edge of the body or back of the saw. The result of the construction described is that the soft body or back may be bent transversely. When the saw is bent, as stated, the isolated or individual character of the teeth is emphasized; for, while each tooth retains its form and integrity, it falls out of line with its neighbor to the extent that the back of the saw is bent. The bases of the teeth then form a series of short straight lines, set along the curve of the bent saw. The idea is plainly to withdraw from the body or back of the saw all rigidity, and to permit each tooth to follow the general curvature of that part of the body on which the base rests, without being restrained by any rigid connection with its neighbors. The individual teeth themselves, it may be noted, being very hard, do not bend, but retain their integrity of form, notwithstanding that the body or back to which they are individually united may undergo great changes of form."

Elsewhere he says:

"The ideal saw of the patent would consist of a tough, soft, pliable body or back, with a series of hard teeth grafted or applied, so to speak, upon one of its edges, each tooth being virtually separated from its neighbors by an infinitesimal joint of soft metal."

Seemingly, this is a desirable result in hack saws, where sideways twists are not measurably prevented by the back clamps, and especially desirable in band saws, where constant sideways twists are inseparable from their operation; and there is no evidence that in either of these varieties of saw was such an arrangement of temper used before the date of the patent. To what extent the inventor understood the novel function of fractional tempering when located just where he placed it is not quite clear. If he appreciated all its advantages as thoroughly as complainants' witnesses now describe them, it is difficult to see why he did not restrict his specification of improvements to hack and band saws, to the blades of which, as his counsel admits, the advantage of such a degree of pliability seems to be confined, or why he did not point out the novel features of his invention in more intelligible language. Still, an inventor is not to be deprived of his invention because he builded better than he knew, when he discloses precisely what the concrete thing is in which he claims to have embodied it. And this he does in unmistakable language. Neither testimony nor exhibit discloses any saw in the prior art, whose high temper was confined to the teeth; and that to them it must be confined is distinctly insisted upon in the patent. Not only does the inventor repeatedly refer to "the teeth" as hard, and the body, blade, or back as soft, but in describing his process of manufacture he says:

"I then proceed to harden the teeth to a high temper down to their base line, or line of juncture with the body of the saw, taking care that the hard

temper is confined to the teeth alone, and does not extend at all into the body of the saw."

The first claim also is for a saw "as described, made from tough, pliable steel, and having the teeth thereof hardened to a high temper down to their base line or line of juncture with the body of the blade, substantially as described." Inasmuch as such a saw appears by the testimony to present features of novelty and utility not found in the prior saws, which were either tempered uniformly, or else so tempered that not only the teeth themselves, but adjacent strips of the blade were hardened, this first claim is sustained.

The complainants further contend that besides saws which, as they come from the maker's hands, present the novel feature of jointing a number of brittle sections on a flexible back, they are entitled to include within the patent saws which also have a strip of the metal adjacent to the teeth tempered as they are. Complainants' suggestion with regard to these is that when they are bent, cracks are developed which extend from the roots of one or more notches between the teeth inward as far as the hardened metal extends; that, as this bending is continued, cracks are developed running inward from all the notches, the practical result being the teeth themselves are thereby elongated, and, when thus elongated, operate in the same way as they do in saws where the tempering stops at the base line of the teeth.

In support of this contention, complainants refer to this paragraph of the specification:

"While I am able so to temper the blade that the temper line may be at any point in the width of the blade, I preferably fix upon the base line of the teeth as the best and most advantageous point."

And to the second claim:

"(2) A saw, as described, of a single piece of metal, with a soft back and high-tempered hard teeth, as specified."

The proposition that the temper line may be at any point in the width of the blade is opposed so diametrically to what the inventor has most specifically and carefully pointed out as the construction of his invention that it cannot be taken as broadly as the complainants contend for. Certainly, the second claim cannot be construed to cover saws in which the temper runs as far into the blade as it did in those already known to the art. It is easy to understand that it might be difficult to locate the temper line on every blade so that it would be mathematically coincident with the bases of the teeth, and thus the blade be bent or twisted without producing any break or crack whatever. And blades where the temper line extended some unappreciable distance into the blade beyond the bases of some or all of the teeth would, when bent, give forth the crackling noise which indicates a fracture, and might even disclose such fracture to the eye. Still, where such variance from the distinctive fractional tempering of the patent was trivial, the saw would still be in substance the saw of the patent, not the saw of the prior art, in which the tempering extended substantially into the blade. In these earlier saws the high temper extended as far inward from the base of the teeth, as the teeth themselves projected outward,

and in some instances the tempered strip was wider yet. The utmost effect that can be given to the second claim, therefore, is to hold that it covers blades where the temper line, although not mathematically, is yet practically, coincident with the base line.

As thus construed, the defendants' saws infringe neither claim of the patent. The depth of their teeth is somewhat less than 1/32 of an inch; and the depth of high temper, measuring from the extreme points of the teeth, is 5/32, or over.

The bill is dismissed, with costs.